# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

TERRY PROCTOR                                                                                              PLAINTIFF
ADC # 87410

V.                                              5:08-cv-00247-JLH-JJV

WENDY KELLEY, Deputy Director,
Arkansas Department of Correction, *et al.*                                                 DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Chief Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.  Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence to be proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.  The details of any testimony desired to be introduced at the hearing before the

District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

Plaintiff, Terry Proctor, filed this action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his long-standing back injury pain. Motions for summary judgment have been filed by both the Correctional Medical Services Defendants (Doc. No. 129) and Arkansas Department of Correction Defendant Wendy Kelley (Doc. No. 133). Plaintiff has filed multiple responses (Doc. Nos. 136, 138-142) and the matter is ripe for disposition.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. *Reed v. ULS Corp.*, 178 F.3d 988, 990 (8th Cir. 1999). A moving party is nevertheless entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof

at trial. *Celotex*, 477 U.S. at 322-23. To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists. *Id*. at 324; FED.R.CIV.P. 56(e). A nonmovant has an obligation to present affirmative evidence to support his claims. *Settle v. Ross*, 992 F.2d 162, 163-64 (8th Cir.1993). A litigant's verified complaint is generally considered an affidavit for purposes of summary judgment. *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994). Moreover, *pro se* complaints must be liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II.     FACTUAL BASIS AND ANALYSIS

### A.     Plaintiff's Complaint

Plaintiff filed this action *pro se* on September 3, 2008 (Doc. No. 2) regarding treatment for an injury sustained in January of 1998. The events giving rise to this litigation occurred at the Tucker Maximum Security Unit. Plaintiff states his back pain increased dramatically and was so great it caused him to walk with a limp. On July 12, 2007, Plaintiff submitted a sick call request and was seen by a physician at the unit, Dr. Bowler. After his visit with Dr. Bowler, Plaintiff submitted a grievance, charging that Dr. Bowler had "flat out" refused to treat his condition. According to Plaintiff, Dr. Bowler told him that "surgery would not do . . . any good" and if he recommended it, "[Correctional Medical Services] would deny it." His grievance on the subject states: "For Dr. Bowler to not forward me to another physician who specializes in these type injuries and not examine, x-ray me is callous indifference to my serious medical need." (Doc. No. 2 at 26). Deputy Director Wendy Kelley responded to Plaintiff's grievance appeal on October 24, 2007, stating: "Records reflect you have been seen by Dr. Bowler on July 12, August 6, September 6, and October 8, 2007. On July 12, Dr. Bowler advised you that he recommended conservative treatment as he

felt aggressive evaluation and therapeutic intervention was not indicated at that time. You are currently receiving Tramadol 50 mg every evening and this order will not expire until April 4, 2008. You advised Dr. Bowler on October 8, 2007, that your condition had improved with this medication. There has been no recommendation for surgical intervention or referral to a consultant." *Id.* at 28.

When Dr. Bowler left the unit, Plaintiff was seen by Dr. Neema Suphan. Plaintiff claims Dr. Suphan told him he did need surgery for his back, but the procedure was never arranged. Plaintiff states that during the spring of 2008 his back was x-rayed twice, and he was taken to Little Rock for an MRI, "which at that time revealed destructive damage to two or more vertebrates in Plaintiff's lower left back and Plaintiff was diagnosed with spodylithesis [sic], which is a slipping of the vertebrates. However, Plaintiff personally physically viewed his x-rays and MRI, [t]he damage is considerable more severe than pronounced by Ms. Kelley in her response." (Doc. No. 2 at 15).

The remaining Defendants are Ms. Burnett, the infirmary grievance officer; Juanita Stell[1] and Bernadine Williams, medical specialists for Correctional Medical Services; and Health Care Administrator/Infirmary Manager Tim Mullins. Plaintiff contends Defendants Burnett and Kelley deprived him of "due process of law rights and his access to the courts rights" by failing to respond to Plaintiff's grievances. (Doc. No. 2 at 12-13).[2] Plaintiff adds that he sent multiple

---

[1] Plaintiff filed a Motion to Dismiss (Doc. No. 112) which asks leave to voluntarily dismiss his claims against separate Defendant Juanita Stell. This was followed by a "Motion to Withdraw Motion to Dismiss Juanita Stell" (Doc. No. 147) which says he meant to dismiss Defendant Williams instead. Plaintiff also argues that Defendant Stell should have responded to his discovery requests notwithstanding his pending request to dismiss her from the lawsuit. The Court recommends both motions be denied as moot.

[2] Plaintiff also filed a "Motion to Amend" (Doc. No. 113) which seeks to clarify his claims against Defendants Kelley and Burnett. In it Plaintiff states he is suing Defendant Kelley for failure to "supervise and correct," and both Defendants for "failure to follow policy."

4

communications to Defendant Mullins "requesting some medical attention oversite [sic] and corrective measures to see that I receive treatment," but was ignored." Defendants Stell and Williams appear to have been named for generally denying Plaintiff the medical care he seeks. *Id.* at 14.

By way of relief Plaintiff seeks injunctive relief in the form of an order directing the Defendants to "immediately arrange for Plaintiff to see some doctors independent of CMS/ADC influence," schedule Plaintiff for surgery, cancel the "steroid injections" that have been recommended, and provide pain medication. He also seeks compensatory and punitive damages.

### B.    Summary Judgment Motions

In their motion and brief (Doc. Nos. 129-130), Defendants Mullins, Stell, Suphan, Burnett, and Bowler argue alternatively that there was no deliberate indifference to Plaintiff's medical needs, and that Plaintiff has failed to exhaust his administrative remedies. Defendant Kelley has raised the same arguments in her request for dismissal of the claims against her (Doc. Nos. 133-135).

### C.    Failure to Exhaust

In *Jones v. Bock*, 549 U.S. 199, 203-204 (2007), the United States Supreme Court considered the role that a prisoner's failure to exhaust his administrative remedies should play in the context of deciding the merits of a claim under Section 1983. The Court began its analysis by noting that requiring prisoners to exhaust their administrative remedies had the positive effect of allowing prison officials "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court" which, in turn, "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Id.*, citing *Woodford v. Ngo*, 548 U.S. 81, 89, 95 (2006).

Those purposes served as the backdrop to the Court's consideration of the exhaustion

requirement, which Congress included in the Prison Litigation Reform Act (PLRA) and provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust is "an affirmative defense under the PLRA, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones v. Bock, supra* at 216. Courts charged with determining exhaustion should do so on case-by-case basis, with each prisoner's complaint evaluated in light of its compliance with established prison grievance procedures. *Id.* at 218-19.

Prisoners are required to exhaust all "available" remedies before seeking relief under section 1983. *Woodford v. Ngo, supra* at 85; *See* 42 U.S.C. § 1997e(a). The United States Court of Appeals for the Eighth Circuit has defined "available" as "capable of use for the accomplishment of a purpose; immediately utilizable [and] accessible." *Miller v. Norris, supra* at 740. It does not matter whether the prisoner may have subjectively believed that there was no point in pursuing his administrative remedies. *Lyon v. Vande Krol*, *supra* at 808; *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000), *cert. denied* 531 U.S. 1156 (2001). If exhaustion is not complete by the time of the filing of the prisoner's complaint, then dismissal is mandatory. *Johnson v. Jones, supra* at 627. Prisoners have only been excused from complying with the administrative procedures when correctional officials have prevented prisoners from utilizing the procedures, or when the officials themselves have failed to comply with the administrative procedures. *Miller v. Norris, supra* at 740; *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001).

An inmate's failure to identify by name during the grievance process each individual defendant he later sues in federal court no longer mandates dismissal pursuant to § 1997e(a). The United States Supreme Court's decision in *Jones v. Bock*, 549 U.S. 199 (2007) held that such an

omission was not fatal to a plaintiff's entire case. The plaintiff in *Jones* challenged the rule requiring that every defendant to be named in a subsequent lawsuit must also be named during the grievance process as well as the "total exhaustion" rule.  The *Jones* court concluded that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones* held that the PLRA itself does not impose such a requirement; instead, the parties **must look to what the prison grievance process itself requires**. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 219. *Jones* additionally rejected the "total exhaustion" rule requiring dismissal of the complaint as a whole, concluding instead that courts should proceed with the exhausted claims in instances where the plaintiff has failed to exhaust some, but not all, of the claims asserted.  *Id*. at 219-21.

Plaintiff has provided to the Court several grievances (Doc. Nos. 2, 113, 140) as well as extensive argument that the failure of Defendants Kelley, Mullins, or Williams to respond to multiple grievances absolves him of further responsibility to appeal the denial of grievances. Assuming *arguendo* that Plaintiff's arguments are valid, this is still not sufficient to satisfy the requirements of total exhaustion under the procedures of the Arkansas Department of Correction.

The only individual specifically identified in Plaintiff's grievances on the issue of failure to treat his back pain is Dr. Bowler.  Other defendants in this action received, responded to, or processed Plaintiff's grievances, but Plaintiff was still required to submit a grievance identifying the other defendants specifically as persons against whom he had a grievance.  This Court has previously rejected the argument that a plaintiff need not file a separate grievance against defendants who respond to or receive grievances simply because those defendants signed off on the final steps of the grievances.  *See Johnson v. Toney et al*., case no.  5:08-cv-00038 JLH, docket entry no. 120

(E.D. Ark. Mar. 18, 2009) ("The fact that [the defendants] made final decisions on appeals from denials of Johnson's medical grievances does not *ipso facto* include them as persons against whom Johnson made grievances."), citing *Rowe v. Norris*, 198 F. App'x. 579 (8th Cir. 2006); *Lumholt v. Holder*, 287 F. 3d 683, 684 (8th Cir. 2002).

Upon review of the evidence, including those grievances and submissions by Plaintiff submitted in response to the motion, the Court recommends a finding that Plaintiff has failed to exhaust his administrative remedies as to Defendants Kelley, Suphan, Williams, Stell, Mullins, and Burnett, and they are entitled to dismissal without prejudice of the claims against them.

### D. Deliberate Indifference

All of the Defendants have also argued that there is no genuine issue of material fact as on the question of deliberate indifference. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (*per curiam*) (internal quotation and citation omitted). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). The United States Court of Appeals for the Eighth Circuit has held:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S.Ct. at 292.

*Dulany,* 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

The record before the Court shows that Plaintiff has been treated multiple times and in multiple ways for his chronic pain. During the relevant time period, Plaintiff was seen by Dr. Bowler in 2007 on July 12, August 6, September 6, October 8, and October 30. In his initial observation on July 12, 2007, Dr. Bowler recommended "conservative treatment . . . aggressive evaluation and therapeutic intervention is not indicated at this time." (Defendants' Statement of Material Facts, Doc. No. 131-2, p. 4). Dr. Bowler prescribed a variety of medications, including steroids, tramadol and amitriptyline, for his pain.

An x-ray ordered by Dr. Suphan was taken on January 23, 2008 and revealed "grade 2

9

spondylolisthesis of L5 on S1" (Doc. No. 131-2, p. 11).  "The remainder of the lumbar spine is unremarkable.  Disc spaces are well maintained and the vertebral heights are normal.  Alignment is normal." *Id.*  Following an appointment with Plaintiff on March 3, 2008, Dr. Suphan continued Plaintiff's tramadol prescription and did fill out a consultation request for Plaintiff to be seen by a surgeon regarding his back (Doc. No. 131-2 at 15).  Contrary to Plaintiff's argument, this is not an order for Plaintiff to have surgery.  It is not even a recommendation that Plaintiff have surgery.  This is a request for a consultation for further information on the question whether Plaintiff was an appropriate candidate for surgery.  Someone at Correctional Medical Services (the name may be "Barron") returned the consultation request to Dr. Suphan on March 13, 2008, marked, "Criteria not met - more info needed." In the "Notes" it reads: "Per RMA - need documentation of response to aggressive exercise therapy, activity modification, NSAIDs and antispasmodics if indicated.  This is not considered urgent."

Presumably in response to this directive, Dr. Suphan then ordered a second x-ray, this time to include Plaintiff's neck; added a prescription for acetaminophen/aspirin/caffeine to Plaintiff's tramadol dosage and also authorized a narcotic on May 2, 2008.  Dr. Suphan further requested a consultation with a pain management doctor.  At the direction of the Correctional Medical Services director on May 9, 2008, Plaintiff was also approved for an MRI "to confirm nerve root involvement requiring intervention." *See* Doc. No. 131-2, p. 19.  The MRI was performed on May 21, 2008 (Doc. No. 131-2, p. 22).  The findings reported were "Grade 1 anterior spondylolisthesis of L5 on S1 [and] severe degenerative disc disease. . . with bilateral L5 nerve root impingement." *Id.*  Dr. Suphan then made a third consultation request for evaluation with a pain specialist, which was approved on July 21, 2008 (Doc. No. 131-2, p. 25).  A week later Plaintiff was seen by Dr. Lal, who recommended "nerve root injections." *Id.*  This recommendation was approved by Correctional

Medical Services on August 8, 2008. (Doc. No. 131-2 at 26).

However, when Plaintiff returned to Dr. Lal on August 19, 2008, he declined the procedure and reported that he instead wanted surgery." (Doc. No. 131-2 at 28). Dr. Suphan noted in a Condensed Health Services Encounter report that Plaintiff's "entire x-rays and labs and jackets were reviewed, he has been seen almost monthly, and a MRI of his lumbar was ordered on 5-21-08. After his MRIs were done he was informed of results and was scheduled to see a pain physician first, and then if his pain did not resolve he was to see a back surgeon. At this point he does not have an[y] weakness on walking, and his MRI showed facet arthropathy and grade 1 spondylothesis [sic]. He has refused his srgical [sic] procedure to relieve his back pain. . . . Will try him on naprosyn BID and consult with Dr. Crowell and or Dr. Anderson." (Doc. No. 131-2 at 29). Plaintiff filed the instant lawsuit on September 3, 2008.

Plaintiff returned to sick call in October of 2008 reporting renewed back pain. His acetaminophen/aspirin/caffeine prescription was renewed on October 24, 2008, and Dr. Rectenwald (not a defendant) returned Plaintiff to tramadol and amitriptyline on November 6, 2008. Dr. Rectenwald also made a referral request for Plaintiff to see a pain specialist (Doc. No. 131-2 at 37) but this was not approved because Plaintiff had previously refused to undergo the procedure recommended by Dr. Lal. Dr. Anderson added that "if progresses, to Crowell for surgery." Most recently Plaintiff has been treated by Dr. Ifediora (not a defendant), who noted in his affidavit accompanying the Defendants' summary judgment motion (Doc. No. 131-3) that Plaintiff has now agreed to try injections with Dr. Lal again.

These facts plainly indicate that Plaintiff is disagreeing with the recommended medical treatment and that he is not a victim of deliberate indifference. *See Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (holding that an inmate's refusal of medical care shows that medical

11

professionals were not consciously disregarding his need). Claims against a prison medical official ordinarily challenge the official's treatment or lack of treatment of a plaintiff. *See, e.g., Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499-500 (8th Cir. 2008); *Bender v. Regier*, 385 F.3d 1133, 1137-38 (8th Cir. 2004). In such cases, "the medical professional has available the defense that he was merely negligent in diagnosing or treating the medical condition, rather than deliberately indifferent." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000); *see also Pietrafeso v. Lawrence County*, 452 F.3d 978, 983 (8th Cir. 2006) (deliberate indifference requires more than gross negligence or disagreement with treatment decisions). In other cases, the medical professional acts as a gatekeeper to additional medical personnel capable of providing the required care. *Sealock*, 218 F.3d at 1211. Delaying or refusing "to fulfill that gatekeeper role due to deliberate indifference" violates the Eighth Amendment. *Id.*

The record is clear that plaintiff received frequent medical attention, though not in the form of the surgery he sought. However, as stated previously, a prisoner is not entitled to any course of treatment he so desires. *See Long v Nix*, 86 F.3d 761, 765 (8th Cir. 1996).

While Plaintiff is clearly dissatisfied with the level of care provided, and may truly believe that surgery is the only option, as a matter of law, Plaintiff's claims fail to support a finding that he has been denied medical care. Instead, the record shows a disagreement with the medical professionals about his needs. This simply does not state a cognizable Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*.

Furthermore, Plaintiff has not come forward with any evidence that Defendants Kelley, Mullins, Williams, or Stell were responsible for his medical care. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997)(to succeed on a medical indifference claim, the claim must be brought against the individual directly responsible for the inmate's medical care). As a result, Plaintiff has

failed to create any genuine question of material fact regarding his medical treatment.

Defendants Kelley and Burnett are not liable under § 1983 for simply responding to Plaintiff's grievance. Although Plaintiff may not have been pleased with Defendants' responses, such conduct alone is insufficient to establish liability under § 1983. The United States Court of Appeals for the Eighth Circuit has held that a prison official's denial of grievances is insufficient to impose liability under § 1983. *See Rowe v. Norris,* 198 Fed. Appx. 579, *1 (8th Cir.2006)(unpublished)(per curiam).

Although Plaintiff claims that Defendants Kelley, Mullins, Burnett and Williams knew of his condition through sick calls and grievances and did nothing with regard to treatment of pain, Plaintiff does not provide any evidence that these Defendants, none of whom are physicians, were directly responsible for any treatment decisions. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)("Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment or by prison doctors who fail to respond to prisoner's serious medical needs"). Rather, the evidence shows that the Defendants reviewed Plaintiff's medical records prior to responding to his grievances and found that Plaintiff's medical concerns were being addressed.

In sum, there is nothing in the record to support a finding that the medical care was "so inappropriate as to evidence intentional maltreatment." *Jolly v. Knudsen*, 205 F.3d 1094, 1097 (8th Cir. 2000)(internal quotation marks and citation omitted). Although Plaintiff has filed multiple motions to compel (Doc. Nos. 108, 109, 122, 144) and has argued that the grant of summary judgment in favor of the Defendants while his discovery demands are still pending would be premature, the Court further finds no merit to this argument. The information sought by Plaintiff – "any reprimands, complaints, grievances, lawsuits, employment terminations, malpractice

complaints, abuse of patients complaints filed against both Dr. Bowler and Dr. Suphan, [as well as] drug abuse records, terminations for drug abuse, etc." – would not be discoverable or relevant to his claims. Accordingly, the Court recommends that these pending motions be denied as moot. Plaintiff has also filed a Motion to Strike (Doc. No. 146) the medical records submitted as exhibits in support of the Defendants' Statement of Material Facts (Doc. No. 131). Plaintiff has placed his medical condition at issue in this lawsuit; he cannot now complain that the Defendants' lawyers should not be allowed access to his medical records.

### III.   CONCLUSION

For all these reasons,

IT IS, THEREFORE, RECOMMENDED that the Defendants' motions for summary judgment (Doc. No. 129 & 133) be GRANTED and this action be DISMISSED. All pending motions should be DENIED as moot.

IT IS FURTHER RECOMMENDED that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations would not be taken in good faith.

DATED this 24th day of February, 2010.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE